**Andrzej OSUCH, Jan Sobol, Kazimierz Pajdo, Piotr Surowka and Jadwiga Surowka, Petitioners,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

Nos. 91–1806, 91–2351, 91–3526 and 91–3570.

United States Court of Appeals, Seventh Circuit.

Submitted * July 15, 1992.

Decided Aug. 10, 1992.

Derek A. Gilna, Park Ridge, Ill., for petitioners.

Fred Foreman, U.S. Atty., Ira Raphaelson, Asst. U.S. Atty., Criminal Div., Chicago, Ill., William J. Howard, Lori L. Scialabba, David J. Kline, Robert Kendall, Jr., Anthony W. Norwood, Dept. of Justice, Office of Immigration Litigation, Richard L. Thornburg, U.S. Atty. Gen., Washington, D.C. A.D. Moyer, I.N.S., Chicago, Ill., for respondent.

Before BAUER, Chief Judge, FLAUM and RIPPLE, Circuit Judges.

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in these cases. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Fed. R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, these appeals have been submitted on the briefs. The government has filed motions for summary affirmance in all four appeals. Because of our disposition of these cases, the motions are denied as moot.

PER CURIAM.

Although these cases were appealed separately, we consolidate them for disposition. The petitioners are Polish nationals who seek political asylum based on alleged persecution by the government of Poland because of past activities in the Solidarity movement.[1] All petitioners are represented by the same counsel on appeal, Attorney Derek A. Gilna. The Immigration and Naturalization Service (INS) has requested sanctions against Attorney Gilna in appeal No. 91–3570, *Surowka v. INS,* under Rule 38 of the Federal Rules of Appellate Procedure. We affirm the agency decision in each case, and order Derek Gilna to show cause why sanctions should not be imposed.

## I. Background

### Andrzej Osuch

Mr. Osuch became active in Solidarity as a student in 1976. His activities included attending Solidarity meetings, marching in protests, and handing out flyers. As a result of these activities he was arrested by the Polish police, interrogated, beaten, harassed and threatened. He entered the United States in December 1986, and overstayed his visa. He has conceded deportability. His asylum petition and request for withholding of deportation was denied by the immigration judge on November 6, 1989, and the Board of Immigration Appeals (BIA) dismissed his appeal on March 12, 1991.

### Jan Sobol

Mr. Sobol joined Solidarity in 1980 and helped to organize strikes. He was detained by the police for 48 hours, was summoned numerous times by the police for questioning, and was fired from his job in the construction industry because of his Solidarity activities. After he was fired, he found work on a farm, but the authorities impeded his access to fertilizer and machinery because of his efforts to organize local farmers. He came to the United States in November 1986 for a vacation, and remained beyond his authorized stay. He was arrested by the INS in March 1989. He has conceded deportability. On March 5, 1990, the immigration judge denied his application for asylum and request for withholding of deportation, and the BIA dismissed his appeal on May 17, 1991.

### Kazimierz Pajdo

Mr. Pajdo is a native and citizen of Poland. He filed a petition for asylum and request for withholding deportability. Mr. Pajdo was represented by Attorney Gilna in the proceedings before the INS. Before the immigration judge, Mr. Pajdo conceded deportability, and voluntarily withdrew his petition on December 7, 1990. The immigration judge gave him the privilege of voluntary departure for 90 days to March 7, 1991. Despite the voluntary withdrawal, Mr. Pajdo appealed to the BIA alleging that the immigration judge incorrectly dismissed the petition and that the immigration judge had incorrectly weighed the evidence. The BIA summarily dismissed the appeal as frivolous and "filed solely for the purpose of delay." (Pajdo A.R. 2).

### Piotr and Jadwiga Surowka

Mr. and Mrs. Surowka are natives and citizens of Poland. After entering the United States, they overstayed their visas and filed a petition for asylum and request for withholding deportability. They were also represented by Attorney Gilna before the INS. They conceded deportability, but voluntarily withdrew their applications on December 10, 1990. The immigration judge granted them the privilege of voluntary departure for a six-month period to June 10, 1991. Despite the voluntary withdrawal, Mr. and Mrs. Surowka appealed to the BIA arguing that the immigration judge had incorrectly dismissed their asylum petition and incorrectly weighed the evidence. The BIA summarily dismissed their appeal since Mr. and Mrs. Surowka had received all the relief they had requested from the immigration judge.

---

1. Petitioner Jadwiga Surowka is the wife of petitioner Piotr Surowka. Although she does not allege she herself took part in any Solidarity activities, if her husband is awarded asylum she will also be entitled to it as his spouse.

## II. Analysis

■ We review decisions of the BIA under an abuse of discretion standard. *Vergara–Molina v. INS*, 956 F.2d 682, 684 (7th Cir.1992). We will uphold the BIA's decision "unless it was made without a rational explanation, it inexplicably departed from established policies, or it rested on an impermissible basis." *Cordoba–Chaves v. INS*, 946 F.2d 1244, 1246 (7th Cir.1991).

With respect to the petitions of Mr. Pajdo and Mr. and Mrs. Surowka, the BIA did not abuse its discretion. These parties withdrew their petitions for asylum and essentially left nothing for the BIA to review. The contention that the BIA applied an improper legal standard in denying asylum and the withholding of deportation is without merit. It is apparent from the records in both cases that the appeals from the immigration judges' decisions were frivolous and taken solely for purposes of delay and to frustrate the administrative process.

■ Nor did the BIA abuse its discretion with respect to the appeals of the remaining petitioners. Their arguments are clearly foreclosed under the law of this Circuit. *See Kaczmarczyk v. INS*, 933 F.2d 588 (7th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 583, 116 L.Ed.2d 608 (1991) (BIA can take notice that members of Solidarity are no longer being persecuted by Polish government.); *Skalak v. INS*, 944 F.2d 364 (7th Cir.1991) (BIA did not err in concluding that Polish national's fears of persecution were not well-founded in light of fact that past persecution resulted from Solidarity activities, Communist government had been overthrown, and Solidarity leader is now President of Poland.).[2] None of the petitioners have alleged facts sufficient to place them within that category of cases in which "[t]he experience of persecution may so sear a person with distressing associations with his native country that it would be inhumane to force him to return there, even though he is in no danger of further persecution." *Skalak*, 944 F.2d at 365.

## III. Sanctions

■ The only remaining issue is the government's request for sanctions in appeal No. 91–3570 under Rule 38. Rule 38 sanctions are discretionary with the appellate court. *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 938 (7th Cir. 1989) (en banc). The imposition of sanctions on appeal involves a two-step inquiry. First, we must determine that the appeal is in fact frivolous. If so, we must decide whether this is an appropriate case for imposing sanctions. *Mays v. Chicago Sun–Times*, 865 F.2d 134, 138 (7th Cir.), *cert. denied*, 493 U.S. 900, 110 S.Ct. 259, 107 L.Ed.2d 209 (1989). An appellant's attorney may be sanctioned when it is clear that the appellant is not at fault in filing the frivolous appeal. *Hill v. Norfolk and Western Ry. Co.*, 814 F.2d 1192, 1201 (7th Cir.1987).

■ We have concluded that Mr. and Mrs. Surowka's appeal is frivolous. It is apparent to us, however, that the petitioners are not responsible for their frivolous appeal. The responsibility lies with their attorney, Derek Gilna, so we give him 15 days from the date of this opinion to show cause why the government's expenses for defending against this frivolous appeal should not be assessed against him.

We note that Derek Gilna is already under consideration for the imposition of sanctions by this Court in connection with his representation of Polish nationals. *See Zuba, et al. v. INS*, Nos. 90–3354, 91–1101, 91–1102, 91–1261, 91–1636, 91–3822, 91–3823, 91–3863, 92–1009 and 92–1122, unpublished order (7th Cir. June 24, 1992). We trust that his future submissions to this Court will not be marred by the same disregard for the judicial process that he displayed in appeal No. 91–3570.

### Conclusion

The decisions of the BIA in appeal Nos. 91–1806, 91–2351, 91–3526 and 91–3570 are AFFIRMED. Derek Gilna is given 15 days

2. We note that the briefs of the petitioners are devoid of any mention of this dispositive authority.

to show cause why sanctions should not be imposed.

RIPPLE, Circuit Judge, concurring.

I join fully in the judgment and the opinion of the court. I write separately to note why I agree with the court's decision to afford counsel an opportunity to reply as to the appropriateness of sanctions.

On December 19, 1991, the court amended Circuit Rule 38 to read as follows:

The court may, on its own or on motion of a party, impose sanctions on a party or an attorney as otherwise authorized by law. Before imposing sanctions the court will give reasonable notice to the person or persons that it is contemplating sanctioning and give those persons an opportunity to respond.

Nevertheless, six months later, a panel of this court decided that our handiwork was vague and interpreted the Rule as follows:

Since the question whether to award sanctions was fully discussed in the briefs on the merits, compliance with our recently promulgated Circuit Rule 38 does not require that we allow further briefing on that question, as distinct from the question of the amount of the sanctions. The second sentence of the new rule states, it is true, that "before imposing sanctions the court will give reasonable notice to the person or persons that it is contemplating sanctioning and give those persons an opportunity to respond." But this uncompromising-seeming language must be read against the background of the preceding sentence: "The court may, *on its own or on motion of a party,* impose sanctions...." (Emphasis added.) If the court is minded to impose sanctions not requested by the appellee it must give the appellant a chance to explain why sanctions should not be imposed. But where as in this case the appellee requests sanctions in his brief, with a full statement of the reasons for the request, the appellant has reasonable notice that he may be sanctioned and an opportunity in his reply brief to explain why he should not be. The provision of additional notice by this court would be superflu-

ous in such a case and is not required by the rule as we read it.

*Colosi v. Electri–Flex Co.,* 965 F.2d 500, 505 (7th Cir.1992).

As our decision makes clear today, whatever the merits of *Colosi* when sanctions are imposed on a party, it does not apply when, as here, the appellee requests sanctions on counsel. *Colosi* deals with a situation where the appellee suggests sanctions against an appellant who has at least the theoretical opportunity to reply directly in a reply brief. Here, the appellee (the government) did *not* ask for sanctions against the appellant but against *counsel.* Requiring counsel to defend himself against a charge of professional misconduct in a pleading on behalf of a client creates a significant conflict of interest. By attacking personally the lawyer in its brief, the appellee is able to "divide and conquer" the opposition. The lawyer's best position against sanctions may well be that the position taken on behalf of a client, while perhaps a loser, was not so bad that he ought to be sanctioned for it. Hardly zealous advocacy on behalf of a client.

The court's sensitivity to the problem demonstrates a pragmatic awareness of the ethical responsibility of lawyers and will help preserve a salutary bench-bar relationship in our circuit. Accordingly, I am pleased to join the court's opinion.