998 F.2d 1016
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Jan SZCZEPANIAK, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 92-2007.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 9, 1993.
Decided July 15, 1993.[1]
 
 Before BAUER, Chief Judge, and CUDAHY and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Petitioner seeks political asylum, alleging that he suffered past persecution by the government of Poland because of his activities in the Solidarity movement.
 
 Background
 
 2
 Petitioner is a 57-year-old citizen of Poland, who came to the United States in October 1985 on a tourist visa, which expired in April 1986. In July 1986, the Immigration and Naturalization Service (INS) began deportation proceedings on the basis that he had overstayed his tourist visa. In December 1986, petitioner applied to the INS for political asylum.
 
 
 3
 In June 1987, an immigration judge denied the request for asylum. Five days later, petitioner appealed to the Board of Immigration Appeals (BIA). In April 1992, the BIA affirmed the immigration judge's decision and ordered petitioner to depart the country within 30 days. The BIA found petitioner had not been persecuted in the past, that there was no likelihood of future persecution due to the political changes in Poland, and that notwithstanding those findings, even in the exercise of its discretion, petitioner did not merit political asylum.
 
 Discussion
 
 4
 Section 208(a) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1158(a) authorizes the Attorney General to grant asylum to an alien who is a "refugee." The Act defines a refugee as an alien unable or unwilling to return to his home country because of "persecution or a well-founded fear of persecution." § 101(a)(41)(A), 8 U.S.C. § 1101(a)(42)(A). Thus, the applicant for asylum must demonstrate either past persecution, or a well-founded of future persecution. Balazoski v. INS, 932 F.2d 638 (7th Cir.1991); Kaczmarczyk v. INS, 933 F.2d 588, 593 (7th Cir.), cert. denied, 112 S.Ct. 583 (1991).
 
 
 5
 A determination of ineligibility for asylum must be upheld if "supported by reasonable, substantial and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4). It can only be reversed if the alien's evidence was such that a reasonable factfinder would be compelled to conclude that the requisite fear of persecution exists. INS v. Elias-Zacarias, --- U.S. ----, 112 S.Ct. 812, 815 & n. 1 (1992). The asylum applicant bears the burden of proof on the issue of whether he has established past persecution or a well-founded fear of persecution in order to qualify as a "refugee" under the Act. Sivaainkaran v. INS, 972 F.2d 161, 163 (7th Cir.1992); Carvajal-Munoz v. INS, 743 F.2d 562, 572-73 (7th Cir.1984).
 
 I. Past Persecution
 
 6
 At his deportation hearing, petitioner testified that in 1980 he joined the Solidarity labor union and became a group leader. In 1981, he was arrested, held for 48 hours, and was beaten but not interrogated. In 1983, he was arrested, held for 48 hours, and interrogated about others in the Solidarity union. In 1985, he was arrested, interrogated about the source of Solidarity newsletters found in his home, and warned to stop distributing the literature. One month later, he was fired from his job without warning. He continued to support his family working as a private plumber until eight months later, when he came to the United States.[2] His wife and six-year old son (now 14 years old) remained in Poland.
 
 
 7
 This evidence is equivalent to, or no more compelling than, the evidence presented in other cases where this court upheld the rejection of asylum claims based on past persecution. See, e.g., Skalak, 944 F.2d 364, 365 (7th Cir.1991) (denial of asylum lawful where petitioner jailed twice for interrogation, three days each time, and harassed by officials at work); Kubon v. INS, 913 F.2d 386, 388 (7th Cir.1990) (denial of asylum lawful where petitioner jailed for five days; a "brief confinement for opposition to a totalitarian regime does not necessarily constitute persecution"); Zalega v. INS, 916 F.2d 1257 (7th Cir.1990) (denial of asylum lawful where police brought petitioner in every three months and interrogated him for several hours about his Solidarity connections).
 
 
 8
 Petitioner asks that we reverse our decisions in these three cases, and urges that "as a matter of law," we should hold that "any arrest and imprisonment for political reasons be considered persecution." We decline to do so. The spectrum of a government's adversarial encounters with its citizens is broad, sometimes ranging from brief detention and mild harassment to lengthy imprisonment and torture. See Skalak v. INS, 944 F.2d at 365. We will not isolate a single act from the less severe end of this spectrum and label it "persecution" for purposes of establishing refugee status under the Act. The definition of refugee is necessarily narrow where "a more lenient and compassionate policy would qualify the entire population of many war-torn nations for asylum," and therefore "conditions of political upheaval which affect the populace as a whole or in large part are generally insufficient to establish eligibility for asylum." Sivaainkaran v. INS, 972 F.2d at 165.
 
 II. Abuse of Discretion
 
 9
 Petitioner contends that the BIA abused its discretion in not granting asylum.[3] Even where a petitioner establishes his status as a "refugee," through either past persecution or a fear of future persecution, the BIA need not, in its discretion, grant asylum. Once an applicant meets the definition of "refugee," the grant of asylum is purely discretionary. 8 U.S.C. § 1158(a). Our review of this determination is limited to whether the BIA's discretion was "actually exercised and whether it was exercised in an arbitrary or capricious manner." Espinoza v. INS, No. 91-3346, slip op. at 4 (7th Cir. April 22, 1993).[4]
 
 
 10
 In exercising its discretion, the BIA must balance the social and humane considerations[5] in the alien's favor against any adverse factors[6] which might demonstrate his undesirability as a United States permanent resident. Akinyemi v. INS, 969 F.2d 285, 288 (7th Cir.1992).
 
 
 11
 Petitioner maintains that the BIA offered only a summary statement, without rationale, that "the record does not disclose any other humanitarian or compelling bases to warrant a grant of asylum under the circumstances of this case." Petitioner asserts "it is not clear that the Board considered all of the evidence," particularly that petitioner had lived in the United States for over six years at the time of the BIA decision, and had been steadily employed during that time.
 
 
 12
 The only factual information which the petitioner was asked about at the hearing before the immigration judge concerned petitioner's Solidarity-related conduct in Poland and in the United States, and the Polish communist government's responses. The application contains only a small amount of additional information, i.e., petitioner has no relatives in the United States; he worked (in 1986) as a laborer for $6.00 an hour; and his son (born in May 1979) and wife remained in Poland. No other information was before the BIA. It is not surprising, therefore, that the BIA never mentioned such factors as petitioner's ties to the United States; his length of residence here (now eight years); or his history of employment or service to the community. See Shahandeh-Pey, 831 F.2d at 1387.
 
 
 13
 We have previously emphasized that the immigration judge and BIA may not exclude evidence which, if proven, has the potential for affecting the ultimate outcome of the case. Espinoza, slip op. at 9; Shahandeh, 891 F.2d at 1388-89. However, this is not a case where, e.g., the immigration judge or the BIA "blind-sided" the petitioner by ruling that additional factual evidence was insignificant and unnecessary. See Espinoza, slip. op. at 9-10 (immigration judge precluded petitioner from presenting evidence about drug rehabilitation program); Shahandeh, 831 F.2d at 1388-89 (court reversed BIA denial of asylum after immigration judge precluded petitioner from presenting evidence in support of his application such as family ties, employment history and evidence of genuine rehabilitation, and Board failed to mention or weigh relevant factors such as the State Department's advisory opinion concluding that petitioner had established a well-founded fear of persecution, the murder of petitioner's father in Iran, the detention of his mother, and the human rights abuses of the Khomeini government). Moreover, the evidence absent from the record in this case played no role in the BIA's decision. Cf. Espinoza, slip op. at 9-11 (BIA ordered deportation on basis that petitioner failed to enroll in drug rehabilitation program until after deportation proceedings commenced; immigration judge, however, who ruled in favor of petitioner, had informed petitioner that information about his reasons for delaying enrollment were not significant and should simply be "put aside").
 
 
 14
 We have also held that the BIA cannot offer a bare conclusion for its refusal to exercise its discretion favorably to an applicant for asylum. See Bastanipour v. INS, 980 F.2d 1129, 1131, 1133 (7th Cir.1992). In Batanipour, however, the BIA assumed that the Iranian petitioner lacked a well-founded fear of persecution[7], offered a "scanty, illogical, and [an] apparently ill-informed analysis of the record," and utterly failed to discuss the balance of equities if petitioner in fact possessed a well-founded fear of persecution. Nothing similar occurred here.
 
 
 15
 In the present case, the BIA, in a lengthy and detailed opinion, explained its consideration and its careful weighing of each piece of factual evidence which petitioner offered. The BIA carefully reviewed the situation in Poland and its effect on petitioner.[8] Petitioner made no attempt to offer any additional evidence before the immigration judge. (We will not speculate as to whether the information concerning his life since arriving in the United States was perhaps not favorable to his application for asylum.) Moreover, petitioner made no effort to later present the information to the BIA. The only additional argument he offered before the BIA was a request that the BIA not consider any political changes in Poland.[9] Thus, petitioner simply offered nothing additional for the BIA to consider in the discretionary stage of the analysis.
 
 
 16
 We note that at the time of the 1987 hearing before the immigration judge, petitioner had been in the United States for less than two years. At the time of the 1992 BIA decision, he had been here for nearly seven years.[10] While we express continued concern about these sluggish delays[11], petitioner does not claim that any favorable events occurred during the years that his application languished within the system.[12] He has since made no motion to reopen the case to present new evidence of events occurring after the BIA rendered its decision.[13]
 
 
 17
 The burden is on petitioner to convince us that the BIA failed to adequately consider evidence before it. Kaczmarczyk v. INS, 933 F.2d at 595, citing McLeod v. INS, 802 F.2d 89, 95 n. 8 (3rd Cir.1986). Petitioner has failed to carry that burden here. We hold that the BIA did not abuse its discretion in denying political asylum to petitioner. For these reasons, the decision of Board of Immigration Appeals is AFFIRMED.
 
 
 
 [1]
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). Appellant has filed such a statement and requested oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record
 
 
 [2]
 Petitioner also testified at the deportation hearing that since arriving in the United States, he has been involved in a Solidarity support group, and participated in a demonstration at the Polish consulate. He has received letters from his wife stating that three or four times since 1985, the police had come to their home in Poland looking for petitioner
 
 
 [3]
 Petitioner also urges that the degree of persecution an applicant suffered should be dealt with only in the discretionary stage of the asylum decision. After an applicant has established his eligibility for refugee status, the "likelihood of present or future persecution then becomes relevant as to the exercise of discretion." Matter of Chen, Interim Decision 3104 (BIA April 25, 1989). Permitting a petitioner to prove past persecution in the first stage is favorable to the petitioner in that it creates a presumption in favor of a petitioner's claim of well-founded fear of future persecution, thus shifting the burden to the BIA, which then must rebut by weighing other factors. Skalak v. INS, 944 F.2d 364, 365 (7th Cir.1991)
 
 
 [4]
 Cf. Ortiz-Salas v. INS, no. 92-2369, slip op. at 6 (7th Cir. April 22, 1993) (criticizing government for taking position that the Board has no fixed standard of review and advising that "the Board of Immigration Appeals indicate what standard of review it means to use in these cases")
 
 
 [5]
 Factors supporting granting of asylum include: (1) family ties within the United States; (2) residence of long duration in United States; (3) evidence of hardship to alien and family if deportation occurs; (4) service in this country's armed forces; (5) history of employment; (6) existence of property or business ties or evidence of value and service to the community; (7) proof of genuine rehabilitation if a criminal record exists; and (8) evidence attesting to the aliens' good character. Shahandeh-Pey v. INS, 831 F.2d 1384, 1387 (7th Cir.1987)
 
 
 [6]
 Factors supporting the denial of asylum include: (1) the nature or underlying circumstances of the exclusion ground at issue; (2) the presence of additional significant violations of immigration laws; (3) the existence of a criminal record and if so, its nature, recency, and seriousness, and (4) any other evidence indicative of an alien's bad character or undesirability as a permanent resident of this country. Shahandeh-Pey, 831 F.2d at 1388
 
 
 [7]
 The BIA may properly base denial of relief on discretionary grounds and skip the issue of statutory eligibility ( INS v. Bagamasbad, 429 U.S. 24 (1976) (per curiam), but must then give reasons for its discretionary determination. Bastanipour, 980 F.2d at 1131
 
 
 [8]
 Cf. Bastanipour, where court commented that "the Board's handling of the question of apostasy makes us wonder whether the Board's knowledge of Iran is any greater than its knowledge of Biafra, about which we commented critically in Osaghae v. INS, 942 F.2d 1160, 1163 (7th Cir.1991)
 
 
 [9]
 The BIA properly took notice of the fact that in 1989, the Solidarity party came into power in Poland, and the Communist government was overthrown. See Osuch v. INS, 970 F.2d 394, 396 (7th Cir.1992) (Poland); Skalak v. INS, 944 F.2d at 365 (Poland); Kaczmarczyk v. INS, 933 F.2d at 593-95 (Poland). Petitioner has not argued in this court that taking official notice of the changes in Polish government results in a blanket denial of asylum to all Polish applicants. See Kaczmarczyk v. INS, 933 F.2d at 593, 595
 
 
 [10]
 A petitioner's filing of an appeal from the immigration judge's decision, and then from the BIA's decision, may in some cases be characterized as appeals which are "frivolous and taken solely for purposes of delay and to frustrate the administrative process." Osuch v. INS, 970 F.2d at 395. While this case is not similar to Osuch, where petitioners actually withdrew their petitions for asylum and then appealed the denial of asylum, we do note that presenting little evidence to the INS and then stepping into the appeal process's delay-laden quagmire did have the effect of buying the petitioner an additional six years in the United States
 
 
 [11]
 See Sivaainkaran, 972 F.2d at 166 (expressing this court's continued distress that "asylum cases move so sluggishly through the administrative and judicial process that by the time they reach us, the relevant political circumstances may have significantly changed"), quoting Balazoski v. INS, 932 F.2d 638, 643 (7th Cir.1991)
 
 
 [12]
 The events which occurred during the intervening years that were unfavorable to the petition for asylum, of course, included the September 1989 coalition formally recognizing the Solidarity organization as part of the Polish government, and the subsequent election of Lech Walesa, the long-time leader of the Solidarity movement, as Poland's president
 
 
 [13]
 See Kaczmarczyk v. INS, 933 F.2d at 597 (petitioner may make such a motion to reopen the record, and may appeal the Board's denial of such motions to this court)